IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| **MATTHEW COLE LEATH** | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO.: 1:08cv358 |
| | § | |
| VS. | § | |
| | § | |
| **TRACER CONSTRUCTION COMPANY** | § | |
| **AND TYCO THERMAL CONTROLS, LLC** | § | |
| | § | |
| Defendant. | § | |

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, Plaintiff, MATTHEW COLE LEATH, and files this his Motion for Partial Summary Judgment regarding the entitlement to payment of earned commissions in part made the basis of the above referenced cause of action, and in support of said Motion would show unto the Court as follows:

### History of Litigation / Background Facts

1.  The instant litigation was initially filed by Plaintiff, Matthew Cole Leath, against the Defendants, Tracer Construction Company and Tyco Thermal Controls, LLC, hereinafter jointly referred to as "Tracer/Tyco", wherein Plaintiff, Matthew Cole Leath, was seeking a declaratory judgment that certain covenant not to compete provisions contained within employment related agreements entered into by and between Plaintiff and Tracer/Tyco were unenforceable due to non-compliance with the provisions of Section 15.50 of the Texas Business & Commerce Code.  After service of the instant cause of action and removal of said claim from the State District Court of Jefferson County, Texas to the instant Court, Defendants Tracer/Tyco filed a counterclaim contending that it is entitled to repayment of certain purportedly advanced and allegedly unearned commissions that had been advanced by Tracer/Tyco to Plaintiff.  After receipt of said counterclaim, Plaintiff Leath amended its Petition not only denying

any obligation to repay any advance of purportedly unearned commissions claimed by Tracer/Tyco, but also asserting that certain earned commissions that had been earned by Matthew Cole Leath, prior to his resignation of employment with Tracer/Tyco were being, and/or would be ultimately wrongfully withheld by Defendants Tracer/Tyco.  Prior to the filing of the counterclaim by Tracer/Tyco, Plaintiff had no notice, of any kind, that Tracer/Tyco was contending (i) that Tracer/Tyco was owed and/or purportedly owed unearned commissions advanced to Plaintiff and (ii) that Tracer/Tyco would withhold payment of earned commissions that had been earned by Plaintiff, prior to his resignation, and that were properly payable to Plaintiff under the terms and conditions of a commission incentive plan provided by Tracer/Tyco to certain employees, including Plaintiff.  The instant Motion for Partial Summary Judgment is based upon the claims of Plaintiff as detailed in the attached summary judgment evidence, that not only are the earned commissions claimed by Plaintiff due and payable by Defendants Tracer/Tyco to Plaintiff, but in addition to same, Plaintiff has not received an advance of any unearned commissions from Defendants Tracer/Tyco and therefore, Plaintiff has no obligation to reimburse any purportedly unearned commission to said Defendants.

### The Commission Agreement

2.    Plaintiff, Matthew Cole Leath, herein sometimes referred to as "Leath", was hired by Defendants Tracer/Tyco as an area sales representative.  The terms and conditions of his employment, including consideration to be earned incident to said employment, included both a base salary and the ability to earn certain commissions.  The commissions payable to Plaintiff, which were to be in addition to his base salary, were detailed within an agreement referred to as the "Sales Incentive Plan", which was modified, from time to time, during the term of Plaintiff's employment with Tracer/Tyco, which commenced in September 2004.  The Sales Incentive Plan in force as of the events made the basis of the instant litigation and the events made the basis of this Motion for Partial Summary Judgment is that certain "TTC-GC Sales Incentive Plan – FY08" with an effective date of October 1, 2007.  A copy of this Sales Incentive Plan, which

will be referred to hereinafter as the "Commission Agreement" is attached hereto as Exhibit "A" and incorporated herein for all purposes. Plaintiff would show that the Plaintiff's entitlement to payment of earned commissions, whether during employment and/or subsequent to termination, is governed by the terms and conditions of the subject Commission Agreement. Further, it is uncontroverted that the interpretation of the Commission Agreement attached hereto as Exhibit "A" is question of law for the Court.

### Accrual of Earned Commissions

3. Section 4 of the Commission Agreement attached hereto as Exhibit "A" details the nature and extent of the commissions to be earned by parties subject to said Agreement, including Plaintiff, Matthew Cole Leath. As detailed in Section 4, subpart 2, "Commission is earned at 10% of the gross profit margin for material sales" and "commission is earned at 10% of the gross profit margin for service sales". The Agreement further provides that "commissions are paid in the month after the Company has received its total project payment". Subpart 3 under Section 4 of the Commission Agreement details the commission splits, including particularly the rules by which the Company will allocate commissions earned for a particular project by and between the employees entitled to commissions who worked on the project and/or solicited the contract which ultimately resulted in commissions earned by Terminated Employee in said project.

4. The Commission Agreement contemplates, from time to time, that employees who are entitled to commissions under the terms and conditions of the Commission Agreement may ultimately either leave the employ of the Company or alternatively, may transfer to other job duties within the Company where they are no longer entitled to earn additional commissions. The Agreement provides how these employees are to be compensated for **commissions earned** prior to this change in status. These provisions are detailed in Section 5 of the Commission Agreement, including the subpart of Section 5 which is entitled "Sales Person

Transitions". This Agreement provides that "in the event a sales person is hired, promoted, reassigned or terminated, the following rules will apply:

(1) New hires and transfers into a territory do not automatically assume existing backlog effective the date of account assignment;
(2) Under no circumstances can a sales person receive commission credit on transactions that invoice prior to account assignment;
(3) Sales Commissions/Bonus shall be paid to eligible sales person actively employed on the date of payment of the commissions, and/or bonuses. Transfers out of territory or **terminated sales persons** receive sales commission/bonus, per the project credit sharing plan, only to and including the date of transfer or termination. No other carry or hold over is allowed unless expressly agreed to by TTC VP of Sales NA or his designee.
(4) Sales commission/bonus issues must be resolved **prior to separation** to be eligible for payment. Submissions for payment after voluntary or involuntary separation will not be paid."

The foregoing provision clearly and unequivocally provides that commission are still payable to employees whose services are terminated (the Agreement does not differentiate between involuntary or voluntary termination), however, the Agreement provides that the terminated sales person is entitled to receive commissions "per the project credit sharing plan, only to and including the date of transfer or termination". It further also provides that issues related to the payment of sales commissions and/or bonuses are to be resolved prior to separation. In other words, commissions are earned even by terminated employees pursuant to the project credit sharing plan and in addition, the employee who is entitled to commission is obligated to **CONFIRM** and resolve his entitlement to earned commissions prior to separation of his employment. The Agreement clearly and unequivocally does not provide, as claimed by Defendants Tracer/Tyco, that terminated employees are not entitled to payment of any previously **earned commissions**. This would not only be in violation of the Commission Agreement, but would also be in violation of applicable Texas and federal law.

5. In order to monitor the commissions payable to various persons entitled to participate in the Sales Incentive Plan, Tracer/Tyco utilized a commission accounting system which not only tracked projects by project number and name, but also detailed the commission split to which the employee would otherwise be entitled and for which commissions were

4

deemed "earned". These reports included the "project partner split report" and the "weekly results analysis report" that were generated routinely through Defendant Tracer/Tyco's accounting system.

### Leath's Earned Commissions

6. Plaintiff, Matthew Cole Leath, would show that in compliance with the terms and conditions of the Commission Agreement, prior to submission of his resignation to the Company and termination of his employment with the Defendants, Plaintiff **CONFIRMED** the earned commissions to which he was entitled to payment, including, but not limited to, (i) the projects for which he was entitled to commissions, (ii) the fee split, if any, applicable to said earned commissions, and (iii) the amount of commissions earned through the date of resignation. Plaintiff confirmed these earned commissions, in compliance with the terms and conditions of the Commission Agreement, with his supervisor, Bill Collier. Mr. Collier, on behalf of Tracer/Tyco, confirmed the fact that Plaintiff had earned these commissions, which is in compliance of the terms and conditions of the Commission Agreement, including particularly Section 5 and the provisions within said Section which requires that "sales commissions/bonuses must be resolved prior to separation to be eligible for payment". (Affidavit of Matthew Cole Leath, Paragraphs 6-9).

7. Plaintiff, Matthew Cole Leath, would show that after all offsets and credits, the earned commissions due and payable to Plaintiff, Matthew Cole Leath, under the terms and conditions of the Commission Agreement, are in the amount of $128,000.00. Plaintiff would show that this sum includes **an offset equal to the** $70,000.00 that had been advanced to Plaintiff for earned commissions that is the basis of the Defendants, Tracer/Tyco's counterclaim. In support of same, Plaintiff would refer the Court to that certain Affidavit of Matthew Cole Leath attached hereto and incorporated herein for all purposes. (Affidavit of Matthew Cole Leath, Paragraphs 6-9).

5

8. After all offsets and credits, Plaintiff, Matthew Cole Leath, would show that he has earned commissions due and payable from the Defendants Tracer/Tyco in the amount of $128,000.00 and that said commissions are currently due and payable from Tracer/Tyco to Plaintiff. Plaintiff would show that in light of the summary judgment evidence attached hereto and incorporated herein for all purposes, including with particularity the Affidavit of Matthew Cole Leath, Plaintiff is entitled to partial summary judgment related to (i) recovery of said earned commissions from Defendants Tracer/Tyco, and (ii) denial of Defendants Tracer/Tyco's counterclaim for repayment of purportedly advanced unearned commissions.

WHEREFORE, PREMISES CONSIDERED, Plaintiff would request that the Honorable Court, after notice and an opportunity to respond, grant Plaintiff's Motion for Partial Summary Judgment in all respects, that the Court grant Plaintiff a partial judgment for recovery of Plaintiff's earned commissions in the amount of $128,000.00, that the Court enter a partial summary judgment denying the counterclaim of Defendants Tracer/Tyco, and that Court grant Plaintiff such other and further relief, at law and in equity, to which he may show himself justly entitled.

Respectfully submitted,

McPHERSON, HUGHES, BRADLEY,
WIMBERLEY, STEELE & CHATELAIN, L.L.P.
3120 Central Mall Drive
Port Arthur, TX  77642
(409) 724-6644
(409) 724-7585 - Facsimile

BY:_____
     JAMES E. WIMBERLEY
     Texas Bar No. 21750350

ATTORNEYS FOR PLAINTIFF,
MATTHEW COLE LEATH

**CERTIFICATE OF CONFERENCE**

      I hereby certify that a conference has been held on the merits of Plaintiff's Motion for Partial Summary Judgment, with results as follows:

____    I have been unsuccessful in my attempts to contact opposing counsel.

____    I have been unsuccessful in my attempts to discuss this matter with Defendants' counsel, as said attorney has not returned my telephone calls or responded to my letter.

_X_    This matter has been discussed with opposing counsel and the Motion is opposed by both Defendants.

____    Opposing counsel has agreed or is unopposed to Plaintiff's request under this Motion.

_____
JAMES E. WIMBERLEY


**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing has this the 14th day of April, 2009, been forwarded via Electronic Filing to the attorneys for the Defendant, Ms. Carolyn Russell.

_____
JAMES E. WIMBERLEY